FILED BY _____ D.C.

SEP 04 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 4:24-05020-MJ-SNOW

IN RE SEALED COMPLAINT
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)? No.

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? No.

3. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No.

4. Did this matter involve the participation of or consultation now Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: /s/ Nicholas Y. Carré
Nicholas Y. Carré
Assistant United States Attorney
Court ID No. A5503198
99 Northeast 4th Street
Miami, Florida 33132
Tel. No. (305) 961-9189
E-mail: Nicholas.Carre@usdoj.gov

AO 91 (Rev. 11/11) Criminal Complaint

FILED BY _JAR_ D.C.

SEP 04 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
| v. | ) |
| | ) Case No. |
| DAYANA BENITEZ | ) 4:24-05020-MJ-SNOW |
| | ) |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **April 5, May 2, and August 22, 2024** in the county of **Monroe** in the **Southern** District of **Florida and elsewhere**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of a Controlled Substance |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_Complainant's signature_

Greg Ball, Special Agent, FBI
_Printed name and title_

Sworn to before me telephonically.

Date: 9/4/24

City and state: Key West, Florida

_Judge's signature_

Hon. Lurana S. Snow, U.S. Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Greg Ball, being first been duly sworn, depose and state as follows:

## AGENT BACKGROUND AND INTRODUCTION

1. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2021. I am currently assigned to the FBI Miami Field Office, Key West Resident Agency in Key West, Florida. I have received training from the FBI relating to the methods used by narcotics traffickers to import and distribute narcotics. I have been personally involved in multiple investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to commence drug transactions and launder drug proceeds. During the course of these investigations, I have participated in the seizure of cocaine. I have conducted physical surveillance and have participated in multiple narcotics seizures. As a result of my experience and training, I am familiar with the manner in which various types of illegal drugs are cultivated, manufactured, smuggled, distributed, and diverted, as well as the various methods used by narcotics traffickers to finance drug transactions and launder drug proceeds.

2. As a Special Agent of the FBI, I am authorized to conduct investigations into criminal violations of the laws of the United States, including conspiracy and attempt to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846, and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1). Thus, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Titles 8, 18, 19 and 21 of the United States Code.

3. I submit this Affidavit based on information known to me personally from the investigation, as well as information obtained from others who were directly involved in the matter or have personal knowledge of the facts herein.

4. The information contained in this Affidavit is submitted for the limited purpose of establishing probable cause to obtain a criminal complaint charging **Dayana Benitez ("BENITEZ")** with distribution of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1). Therefore, this Affidavit does not include every fact known to me or to other law enforcement officers surrounding this investigation.

## PROBABLE CAUSE

5. The probable cause for this Complaint, as established below, stems from an investigation involving a drug-trafficking organization ("DTO") distributing cocaine in the Southern District of Florida. Through the investigation, law enforcement received information that BENITEZ was supplying and distributing cocaine on behalf of the DTO.

### *BENITZ Conducts a First Narcotics Transaction with a UC*

6. On or about April 5, 2024, a law enforcement officer acting in an undercover capacity ("UC") conducted a controlled purchase of cocaine in the vicinity of 3318 Duck Avenue, Key West, Florida 33040 ("TARGET LOCATION"), a previously identified residence from which narcotics are distributed. Upon arriving at the TARGET LOCATION, the UC waited under a covered carport connected to the TARGET LOCATION. BENITEZ opened a gate in the fence attached to the TARGET LOCATION and walked into the carport area. After exchanging greetings, BENITEZ directed the UC towards the front of a covered car under the carport. The UC observed a paper bag sitting on top of the covered car. BENITEZ told the UC that he/she could grab the bag. The UC looked inside the bag and observed a clear plastic baggie/wrapper that

Case 4:24-mj-05020-LSS   Document 1   Entered on FLSD Docket 09/05/2024   Page 5 of 8

contained a white powdery substance, believed to be cocaine. The UC handed Benitez $1,100.00 in exchange for the suspected cocaine. After discussing the possibility of future narcotics transactions with BENITEZ, the UC departed on foot with the suspected cocaine and BENITEZ reentered the fenced in yard of the TARGET LOCATION. This meeting was audio and video recorded.

7. Following the transaction, law enforcement recovered the suspected cocaine from the UC, which field-tested positive for the presence of cocaine. The cocaine, with packaging, weighed approximately 30 grams.

### *BENITEZ Conducts a Second Narcotics Transaction with the UC*

8. On or about May 2, 2024, law enforcement surveilled the TARGET LOCATION in anticipation of another controlled purchase of cocaine from BENITEZ. Similar to the April 5, 2024, controlled purchase of cocaine, the UC approached the TARGET LOCATION and waited under the covered carport. BENITEZ opened a gate in the fence attached to the TARGET LOCATION and walked into the carport area. BENITEZ then led the UC through the gate into a fenced in yard, up the stairs, and into the kitchen of the TARGET LOCATION. Before opening the kitchen door, BENITEZ showed the UC a small cardboard box and explained that the box had the cocaine inside. Once inside, BENITEZ opened the cardboard box and pulled out two (2) plastic baggies containing suspected cocaine. The UC removed $2,200.00 from a paper bag and handed the money to BENITEZ in exchange for the two baggies of suspected cocaine. BENITEZ then placed the two baggies into a paper bag held by the UC. BENITEZ then took the bag, removed the plastic baggies of cocaine, and placed the cocaine baggies on pieces of paper towel. BENITEZ then wrapped the suspected cocaine with plastic cling wrap and placed it back in the paper bag.

BENITEZ placed the $2,200.00 into the cardboard box that BENITEZ first used to carry the suspected cocaine.

9. The UC and Benitez walked outside and discussed future narcotic sales. During the discussion, BENITEZ explained that she would take the money used to purchase the suspected cocaine back to her associate. BENITEZ said she would talk to her associate(s) about the price of a half kilogram or one kilogram of cocaine, and that she would be in touch with the UC. BENITEZ and the UC walked through the fenced yard and returned to the carport. The UC then observed BENITEZ place the cardboard box containing the money into a storage compartment in a motorized scooter. The UC departed on foot with the suspected cocaine. This meeting was audio and video recorded.

10. Following the transaction, law enforcement recovered the suspected cocaine from the UC, which field-tested positive for the presence of cocaine. The cocaine, with packaging, weighed approximately 64 grams.

### BENITEZ Conducts a Third Narcotics Transaction with the UC

11. On or about August 22, 2024, the UC and BENITEZ exchanged messages through WhatsApp to coordinate another controlled purchase of cocaine from BENITEZ. Specifically, BENITEZ instructed the UC to pick up the narcotics from her residence; provided directions as to where the UC was to leave the money; and sent a picture of herself to the UC. BENITEZ also sent a picture showing where the cocaine was left in the carport area of the TARGET LOCATION.

12. Law enforcement conducted surveillance at the TARGET LOCATION when the UC arrived to pick up the cocaine as directed by BENITEZ. The UC walked into the carport area of the TARGET LOCATION. The UC observed a large white plastic pipe behind a blue trash receptacle. Inside the large plastic pipe was a black backpack, matching the photograph provided

by BENITEZ. The UC removed the backpack, unzipped it, and observed a clear plastic baggie containing suspected cocaine. The UC retrieved the suspected cocaine and placed $1,100.00 in the backpack. Using a cellphone, the UC took a picture of the money in the backpack and sent the picture to BENITEZ.

13. Within an hour of the UC placing the $1,100.00 used to purchase the suspected cocaine in the backpack, one of BENITEZ's known associates, hereinafter referred to as "W.M.", arrived at the TARGET LOCATION and parked under the carport. W.M. walked in the direction of the blue receptacle and large white plastic pipe, where the UC left the $1,100.00. W.M. appeared to be looking for something as he walked around the carport area. W.M. also appeared to make a call on his cell phone while pacing around the carport area. Though surveillance agents observed W.M. near the area of the receptacles, the surveillance agents could not see WM retrieve the $1,100.00 because of the agents' vantage point and the darkness of the back corner of the carport.

14. Following the transaction, law enforcement recovered the suspected cocaine from the UC, which field-tested positive for the presence of cocaine. The cocaine, with packaging, weighed approximately 27.7 grams.

### *BENITEZ Provides a Post-Miranda Confession*

15. On August 28, 2024, agents encountered BENITEZ and conducted an interview with BENITEZ. Agents advised BENITEZ of her *Miranda* rights before the interview, which she freely and voluntarily waived. Post-*Miranda*, BENITEZ admitted to agents that she sold cocaine to the UC on three separate occasions.

### CONCLUSION

16. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that on or about the dates of April 5, 2024, May 2, 2024, and

August 22, 2024, Dayana BENITEZ did knowingly commit the offense of distribution of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

_____
GREG BALL
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to before me telephonically this ____ day of September 2024, at Key West, Florida.

_____
HONORABLE LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE